STEPHEN HILTON & *ux. versus* SULLIVAN LOTHROP & *al., Ex'rs.*

A bill in equity, to obtain a decree to redeem mortgaged premises, is not technically one for discovery, and its verification by oath is not required.

Where a married woman is the owner of an equity of redemption, her husband is properly joined with her in a bill in equity to redeem. (Rev. Stat. of 1857, c. 61, § 3.)

A mortgager who has conveyed all his interest in the mortgaged premises, should not be made a party to a bill in equity to redeem.

The heirs or devisees, as well as the personal representative, of a deceased mortgagee, should be made parties to a bill in equity to redeem mortgaged real estate.

Where a promissory note was secured by a deed which was unconditional upon its face, but a bond of defeasance was given back, (thus constituting a mortgage,) and subsequently the parties entered into a verbal agreement that a further sum should be advanced to the mortgager and his note given up to him, and he should surrender the bond held by him, and the note was actually given up, and nearly the whole amount agreed to be paid, was paid, still, if the bond was not in fact surrendered or cancelled, the mortgager would be entitled to redeem.

In such a case, if the mortgager or the purchaser of his right, brings his bill in equity to redeem, he will be held to account for the amount of the note given up, and for the amount paid to the mortgager under such parol agreement.

SUIT IN EQUITY, which was heard on bill, answers and proof.

The case was argued by *D. D. Stewart,* for plaintiffs, and *J. S. Abbott,* for defendants.

The opinion of the Court was drawn up by

TENNEY, C. J.—This suit is for the purpose of obtaining a decree, permitting the complainants to redeem the premises described in the bill, from a mortgage, alleged to have been given by one James Rogers to the defendants' testator, on August 29, 1835, to secure certain notes, with interest thereon, payable on time, for the sum of $555. It is stated in the bill that, after the giving of the mortgage, the mortgagee went into possession of the premises, and received the rents, profits and income of the same, to July, 1849, when he died, hav-

ing duly made and executed his will in writing, in which he appointed, as the executors thereof, the defendants, who assumed the trust and were qualified; that, on October 8, 1849, the mortgager conveyed the premises to Agnes Hilton, one of the plaintiffs, and that the complainants afterwards notified the defendants to account, &c. The bill is not verified by the oath of the complainants, or any other in their behalf; and the defendants, in answers which they file, insist that, for this defect, the bill cannot be successfully prosecuted; and, they further contend, that Stephen Hilton is improperly joined with his wife as complainant. It is also insisted, that the bill is fatally defective, because James Rogers and Jane Hilton, the widow of the testator, and who is the devisee in the will, of the premises, are not made parties defendant. It is also alleged in the answers, that the plaintiffs are not entitled to the relief sought in the bill, or to any relief in equity; and that, at the time mentioned in the bill, when Rogers gave his notes, as therein stated, he gave an absolute deed of the premises to the testator, and, if a bond of defeasance was executed by the testator at the same time and delivered to Rogers, under a subsequent arrangement between those parties, the notes of Rogers were surrendered to him, and, in consideration thereof, the bond was surrendered to the testator. The whole matter is submitted on bill, answers and proof, and the parties have been heard by their respective counsel.

1. The bill is not regarded, as technically one for discovery, and ,its verification is not necessary. Story's Equity Pl. § 288; Rules of Chancery Practice, 18 Maine, 444, Rule 2; 37 Maine, 581, Rule 1.

2. By the statute of 1848, c. 73, § 1, and by R. S. of 1857, c. 61, § 3, Stephen Hilton was properly joined with his wife in the bill as a complainant.

3. James Rogers had released all his interest in the premises to the plaintiff, Agnes Hilton, before the institution of this suit, absolutely, and also to the bond of defeasance; and, by a well established principle in equity pleading, no necessity for his being made a party existed.

4. The will of Nathaniel Hilton is among the exhibits of the case, and it appears, therefrom, — that the testator devised the premises to his wife and her heirs forever; and, from copies of proceedings in probate, it cannot be doubted, that his estate is solvent, and that all debts and legacies have been paid. If, however, it were otherwise, such condition of the estate would have no bearing upon the question, whether Jane Hilton should be made a party to the bill.

The necessity of making the devisee of the premises a party in the suit, is denied by the plaintiffs' counsel, and he relies upon the cases of *Johnson* v. *Candage*, 31 Maine, 28, and *Taft & als.* v. *Stevens*, 3 Gray, 503, in support of his denial. These cases are quite distinguishable from the one before us, and the doctrines thereof, which we do not controvert, have no application to the question here raised.

Who are the proper parties to be made defendants in a bill to redeem real estate under mortgage ? It is a general rule in equity, that all persons legally or beneficially interested in the subject matter of a suit, should be made parties. Story's Equity Pl. § 77. And, again, it is said in section 188 of the same work, "it may be stated, in general terms, that all persons ought to be made parties, whose interests or rights may be affected by the decree. The mortgagee, is, of course, the only necessary proper party, in all cases where there is no other outstanding interest under him. If the mortgage is in fee, and the mortgagee is dead, the heir at law of the mortgagee, or other person in whom the legal estate is vested, by devise or otherwise, must be made a party ; because he has the legal title and is to be bound by the decree. And the personal representative of the mortgagee, also, must be made a party; because, generally, he is entitled to the mortgage money, when paid, as it is to be returned to the same fund out of which it originally came."

The bill cannot be maintained as it now stands.

But, that the parties may have no further controversy, if it can be avoided, it may not be improper very briefly to indicate our views, upon the evidence before us, of their rights.

The deed from Rogers to the defendants' testator was, upon its face, absolute and unconditional. But, as a part of the same transaction, the grantee gave to the grantor an instrument of defeasance. This, with the deed, constituted a mortgage. In April or May, 1843, nothing having been paid on the notes, and the mortgager having had the possession of the premises, a negotiation was entered into between the parties to the mortgage, by which, for a consideration agreed upon, the title of the mortgagee was to become absolute, and, on May 1, 1843, a receipt was given to him in the following terms:—" May 1, 1843. This day reckoned with Nathaniel Hilton, and found that said Hilton has paid me, on the farm, that I now live on, $1531,59. James Rogers." About this time, James Rogers moved from the farm described in the bill, and Nathaniel Hilton went into possession, and remained in possession till his death. It is fully proved that the amount due upon the notes given by Rogers to Hilton, and secured by the mortgage, was a part of the sum for which the receipt was given, and that the notes were given up to Rogers, who produces them. This would render it reasonable to suppose that, under the new arrangement, by which the testator was to acquire an absolute and indefeasible title to the premises, that the bond of defeasance would be cancelled and given up. And there is evidence tending to prove, that this was actually done; but, from other evidence in the case, it would appear, that the parties to that negotiation gave little attention to the bond, further than to agree, orally, that it should be given up when the transaction should be made complete, according to their agreement. As the evidence is now presented, it may be regarded as doubtful, at least, whether the bond was ever cancelled, as it is now in the possession of Rogers. Even if it was agreed to be surrendered, that is not sufficient, without further acts, and it must be treated as outstanding, though such agreement be established.

But if the bond is uncancelled, the notes are unpaid and are so treated by the complainants themselves. A difference of opinion between the parties to the mortgage having arisen,

Hilton *v.* Lothrop.

in reference to the sum to be allowed as the value of the premises, it is probable, from the evidence, that they postponed the final settlement in relation to the new arrangement, from time to time, till the death of the testator; both parties treating the matter as one, which would end in the acquisition of a perfect title by Hilton.

If it should turn out that the bond was not surrendered, the mortgage is still open. *Farrar* v. *Farrar*, 4 N. H., 191. And the complainants are entitled to redeem.

If a new suit should be instituted, with proper parties, and the Court should hold that the plaintiffs would be entitled to a decree allowing them to redeem, an account would be taken, of necessity, by a master, unless the parties could agree. And if they should stand upon their strict rights, it may be a question so complex, as to be regarded as one of delicacy.

We see no reason why the plaintiff, Agnes Hilton, does not stand in the place of James Rogers, having no different rights and obligations than those which attached to him before his deed of October 8, 1849.

The sum to be paid in order to redeem, if any, will be what is due in equity and good conscience; if the balance should be in favor of the complainants, execution may be awarded for such balance. R. S., 1857, c. 90.

It now appears that large sums had been advanced by the testator to Rogers, in order to make the title of the former absolute, over and above the sum due upon the mortgage notes, some of which were prior to the new negotiation, and which it was agreed should be paid, in order that the redemption should take place. The possession of the testator was taken, in connection with the new negotiation, when the notes of Rogers were surrendered; and it cannot be said that the possession was taken and held under the mortgage, but by virtue of the informal contract to become the unconditional owner of the estate.

The complainants seek equity, standing in the place of Rogers. Can they contend that the large sums which may have been realized by the testator in rents and profits, shall be applied to reduce the amount of the notes secured by the

mortgage, rather than to operate as a set-off to the money, which he paid as the consideration of an indefeasible title to the farm, which he never acquired ? And can it be insisted that, if the testator caused improvements upon the premises, that, in order to redeem, the value of them shall not be also paid ? It is the business of a court of equity to afford protection in such cases, but not to punish a party for his ignorance or carelessness, merely, further than is required for such protection. *Green* v. *Winter,* 1 Johns. Ch. 26.

If the complainants should hereafter, in another suit, obtain the right under a decree, to redeem the premises, care will undoubtedly be taken, so far as equity principles will allow, that the redemption may be obtained by the payment of such a sum as will be found due, upon a proper account taken in equity and good conscience; but that they shall not be relieved from allowing such sums as may be required of them by well settled rules.                *Bill dismissed with costs.*

RICE, APPLETON, HATHAWAY, MAY, and DAVIS, J. J., concurred.